IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

FREDRICK GOREE                                                                    PLAINTIFF

VS.                                            CASE NO. 06-CV-1039

GEORGIA-PACIFIC CORPORATION                                          DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss for Failure to Prosecute or, in the Alternative, Motion for Summary Judgment filed on behalf of Defendant Georgia-Pacific Corporation ("GP"). (Doc. No. 10). The Plaintiff did not respond to the motion. On May 31, 2007, the Court entered an order directing the Plaintiff to show cause to the Court why he had failed to respond to GP's motion. (Doc. No. 13). The Plaintiff has failed to respond to either the Court's show cause order or GP's pending motion. The Court finds the matter ripe for consideration.

## BACKGROUND

Fredrick Goree worked for Georgia Pacific Corporation as a Winder Operator and a Wrapper Operator at GP's facility in Crossett, Arkansas. Goree was hired in 1995 and worked for GP until May 18, 2005, when he was terminated for violating the company's Substance Abuse Policy.

During Goree's employment with GP, he was a member of the Paper, Allied-Industrial, Chemical and Energy Workers International Union, Local 5-0369 ("the Union"). As a member of the Union, Goree was covered by the collective bargaining agreement between GP and the Union.

In 1994, GP implemented a Substance Abuse Policy (hereinafter referred to as the "1994 Policy") which prohibited employees from reporting to work or working while under the influence of alcohol or controlled substances. If an employee violated the 1994 Policy, the offending employee was terminated. However, at times, the employee was reinstated pursuant to a "last chance agreement." Under this agreement, the employee was subjected to random drug or alcohol tests. If the employee tested positive again, he or she was terminated immediately, this time, without the chance of rehire.

In 2001, GP and the Union renegotiated the 1994 Substance Abuse Policy. The 1994 Policy was replaced with a Zero Tolerance Substance Abuse Policy (hereinafter referred to as the "Zero Tolerance Policy"). Under the Zero Tolerance Policy, employees are still prohibited from reporting to work or working while under the influence of alcohol or controlled substances. However, under this policy, if any employee tests positive for alcohol or a controlled substance, the employee is subject to immediate termination without the benefit of the "last chance agreement."

In order to avoid an abrupt transition from the 1994 Policy to the Zero Tolerance Policy, GP gave all its Crossett employees a twelve month grace period beginning in October 2001. During this grace period, an employee who tested positive for drugs or alcohol would be referred to the Employee Assistance Program (EAP) for counseling and offered a "last chance agreement," similar to the agreement available under the 1994 Policy. At the end of this twelve month grace period, the zero tolerance component of the Substance Abuse Policy went into full effect. Therefore, after October 2002, an employee who tested positive for alcohol or drugs was no longer referred to the EAP or afforded the opportunity to sign a "last chance agreement."

Rather, he was subject to immediate termination.

On May 18, 2005, Goree came to work smelling of alcohol. A fellow employee reported this fact to management and Goree was called to the office. When questioned by Tim Shields, GP Supervisor, Goree stated that he had been drinking from 2:30 the previous afternoon until midnight. Goree was sent to the hospital for a blood-alcohol test and suspended pending the results of the test. On May 24, 2005, GP received the result of Goree's blood-alcohol test which confirmed that Goree was under the influence of alcohol while at work on May 18th. On May 27, 2005, Goree met with Tim Shields who informed him that his blood-alcohol test was positive. At this meeting, Goree was terminated for violating GP's Zero Tolerance Substance Abuse Policy.

Goreee filed a Charge of Discrimination against GP with the Equal Employment Opportunity Commision ("EEOC"). On or about January 24, 2006, Goree received a Right to Sue Letter from the EEOC. On April 24, 2006, Goree filed suit against GP alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"). The matter is now before the Court on GP's Motion for Summary Judgment.[1]

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment;

> The judgment sought shall be rendered forthwith if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with affidavits, if any,

---

[1] Along with is Motion for Summary Judgment, GP has filed a Motion to Dismiss for Failure to Prosecute. The Court believes that this case is best analyzed under the standard for summary judgment, rather than under Fed.R.Civ.P. 41(b). Therefore, the Court will not address GP's Motion to Dismiss for Failure to Prosecute.

> show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

## DISCUSSION

In his Complaint, Goree alleges that GP discriminated against him on the basis of his race when it terminated him on May 18, 2005. He claims that his termination was in violation of Title VII of the Civil Right Act.

In employment discrimination cases under Title VII, the Supreme Court has long applied the familiar three-step burden shifting framework set out in *McDonnell Douglas Corp. v. Green,* 41 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff is able to do this, the burden of production then shifts to the defendant to assert a legitimate non-discriminatory reason for the alleged discrimination. If the defendant sets forth a reason, the burden then shifts back to the plaintiff to establish that the asserted reason was merely a pretext for discrimination. Therefore, the Court must first determine if Goree can establish his *prima facie* case of discrimination against GP.

In order to make out a *prima facie* case of wrongful termination under Title VII, Goree must show that 1) he is a member of a protected class; 2) he was qualified for the position he held; 3) he was discharged; and 4) his discharge occurred under circumstance giving rise to an inference of discrimination. *Pope v. ESA Servs. Inc.,* 406 F.3d 1001, 1008 (8th Cir. 2005). Such an inference of discrimination may exist where an employee shows that he was treated less favorably than other similarly situated employees who are not in the protected class. *Clark v. Runyon,* 218 F.3d 915, 918 (8th Cir. 2000). GP claims that Goree can not establish the fourth element of his *prima facie* case—that he was discharged under circumstance giving rise to an

inference of discrimination.

To make out his claim of discrimination, Goree points to a white employee named Cartlton Maxwell. He claims that Maxwell was reinstated after GP terminated him for being under the influence of alcohol at work. However, the Court finds that the discipline received by Maxwell is irrelevant to Goree's claim because Maxwell is not similarly situated to Goree. The incident involving Maxwell happened in 1998—long before the implementation of the zero tolerance component of GP's Substance Abuse Policy. The incident involving Goree happened in 2005—3 ½ years after GP implement its present Substance Abuse Policy and 2 ½ years after the zero tolerance component of the policy went into effect. Goree and Maxwell were disciplined under different policies established at different times. Therefore, Maxwell is not similarly situated to Goree and his treatment can not be used to establish the fourth element of Goree's *prima facie* case. *See Twymon v. Wells Fargo & Company,* 462 F.3d 925, 936 (8th Cir. 2006). In fact, the evidence shows that since the Zero Tolerance Policy has been in effect at GP's Crossett facility, no employee who tested positive for alcohol or controlled substances has been allowed to remain employed at the facility or reinstated following termination. Further, of the five other employees besides Goree who were discharged for violating the Zero Tolerance Policy, four were white. Because Goree has not produced any evidence showing that his termination occurred under circumstance giving rise to an inference of discrimination, he has not made out his *prima facie* case of discrimination against GP.

GP has also presented a legitimate, nondiscriminatory reason for discharging Goree. He came to work under the influence of alcohol and, thereby, violated the company's Zero Tolerance Substance Abuse Policy. Goree has offered no evidence showing that GP's stated reason for his

termination was really a pretext for discrimination.  In fact, the evidence presented to the Court shows that since the Zero Tolerance Policy was instituted, every employee who tested positive for alcohol or a controlled substance has been terminated and none have been rehired after termination.  There is no evidence before the Court that GP's proffered reason for Goree's termination was a pretext for discrimination.  Therefore, Goree's claim against GP for wrongful termination under Title VII must fail as a matter of law.

## CONCLUSION

Based upon the foregoing reasons, the Court finds that Goree has failed to present any evidence showing that racial discrimination motivated GP's decision to terminate his employment on May 18, 2005.  Therefore, the Court finds that Defendant Georgia-Pacific Corporation's Motion for Summary Judgment should be and hereby is **granted**.  A judgment of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 18th day of June, 2007.

    /s/Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge